# In the United States Court of Federal Claims

No. 16-1159 L

(E-Filed May 19, 2017)

|  |  |  |
|---|---|---|
| HUGH MARTIN, SANDRA KNOX, KIRKLAND JONES, and THERON AND SHERILYN MALOY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Fifth Amendment Takings Claim; Motion to Dismiss Under RCFC |
| v. | ) ) | 12(b)(1); Subject Matter Jurisdiction |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

A. Blair Dunn, Albuquerque, NM, for plaintiffs.

Tyler L. Burgess, Trial Attorney, United States Department of Justice, with whom were John C. Cruden, Assistant Attorney General, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge

Before the court is defendant's motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Rules for the United State Court of Federal Claims (RCFC). See ECF No. 11. Defendant argues that the complaint should be dismissed for lack of subject matter jurisdiction because plaintiffs' claim for a regulatory taking is not ripe. See id. at 20. Defendant also asserts that the complaint should be dismissed for failure to state a claim upon which relief may be granted because plaintiffs' do not hold a compensable property interest in the property at issue. See id. at 23. For the following reasons, the court finds that plaintiffs have alleged a regulatory taking, and that the claim is not yet ripe. As such, defendant's motion to dismiss under RCFC 12(b)(1) is granted.

I.     Background

Plaintiffs in this case are individuals who own properties, of various descriptions, within the boundaries of Santa Fe National Forest. See ECF No. 1 at 2-9 (identifying the properties owned by each plaintiff). In addition to the properties owned by each plaintiff, the plaintiffs collectively assert ownership rights in what they term "statutorily vested real property right-of-way easements." Id. at 1. The easements provide access to plaintiffs' properties over government land, and allegedly "exist concurrently and in the same space as [Sandoval] County Roads 268 and 89." Id. at 12.

In June 2011, the Las Conchas Fire, burned portions of the Santa Fe National Forest. Id. at 13. The fire created flood conditions, and sections of County Roads 268 and 89 were damaged in subsequent flooding. See id. Sandoval County authorities began repairing Road 268, but the United States Forest Service demanded that the work stop and prevented the county from beginning work on Road 89, absent compliance with what plaintiffs contend are "cost-prohibitive and unmanageable procedures dictated by the Forest Service." Id. at 13.

In a letter to plaintiffs, Forest Supervisor Maria T. Garcia announced her decision to close the roads. Specifically, she stated: "Our assessment showed that due to the magnitude of damage by the fire and subsequent flooding, public safety would be highly threatened by use of the roads." Id. In the same letter, Ms. Garcia outlined two options for plaintiffs.

> The following two options are available to you as landowners so that you may establish future vehicular access to your property:
>
> 1.    A new (reconstructed) road over existing alignment. You and your neighbors can collectively work together to reconstruct the old road over more or less the same alignment. We can facilitate the creation of a formal road association, which would then be granted a recordable private road easement which would ensure legal and physical access to your private land.
>
> 2.    A new road over a new alignment. You and your neighbors could work together to establish a formal road association (as above) and build a road over a new route which we would help you choose. Unfortunately, given the topography of these canyons, new road alignments will be challenging to locate. A private road easement would be granted to the newly formed road association in the same manner as above.

Id. at 14. When plaintiffs stated their intention "to continue use, repair and reconstruction" of the alleged private easement, an attorney with the United States Department of Agriculture informed plaintiffs that the agency does not agree with

2

plaintiffs' claim to "possess a vested easement," and cautioned plaintiffs that unauthorized use of the roads "may be subject to criminal and civil penalties under federal law." Id.

Plaintiffs' characterize the basis of their claim for relief as follows:

> Defendants' [sic] actions constitute a taking of Plaintiff's [sic] property for which compensation is due within the meaning of the Fifth Amendment to the United States Constitution because absent compliance with the demanded special use permit and associated fees and related costs, Defendant would completely deprive Plaintiff [sic] access to their private property.

Id. at 15. Plaintiffs do not allege in the complaint that they have paid any fees or applied for a permit. In fact, in their response to defendant's motion to dismiss, plaintiffs confirm that they have not done so. See ECF No. 12 at 13.

II. Legal Standards

Defendant seeks dismissal of plaintiffs' complaint on the basis of both lack of jurisdiction under RCFC 12(b)(1), and failure to state a claim upon which relief, pursuant to RCFC 12((b)(6) may be granted. See ECF No. 11. Because the court has determined that it lacks subject matter jurisdiction over this case at the present time, however, there is no need to analyze the sufficiency of plaintiffs' claim.

Plaintiff bears the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). This court has jurisdiction to hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). Here, plaintiffs assert a claim for just compensation for an alleged taking pursuant to the Fifth Amendment to the Constitution of the United States. See ECF No. 1 at 1.

Even if a claim meets this description, however, it must also be ripe in order for the court to exercise its authority. See Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004) (stating that the Court of Federal Claims "does not have jurisdiction over claims that are not ripe") (citing Howard W. Heck & Assocs., Inc. v. United States, 134 F.3d 1468 (Fed. Cir. 1998). "Ripeness is a justiciability doctrine that 'prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . .'" Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1348 (Fed. Cir. 2015) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)).

3

If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint.  RCFC 12(h)(3).

III.    Analysis

As an initial matter, plaintiffs do not explicitly state in the complaint whether they mean to allege a physical or a regulatory taking.  See generally ECF No. 1.  See also ECF No. 11 at 20 (defendant observing this fact in its memorandum in support of the instant motion to dismiss).  In their response to defendant's motion to dismiss, plaintiffs claim that the facts of this case satisfy the requirements for both takings theories.  See ECF No. 12 at 12 ("This case presents to this Court the rare case where the United States has satisfied both the tests for a physical and a regulatory taking.").

The Federal Circuit has explained:

> A physical taking of land occurs when the government itself occupies the property or "requires the landowner to submit to physical occupation of its land," Yee v. City of Escondido, 503 U.S. 519, 527 (1992), whether by the government or a third party, see Preseault v. United States, 100 F.3d 1525, 1551 (Fed. Cir. 1996) (en banc).

Forest Properties, Inc. v. United States, 177 F.3d 1360, 1364 (Fed. Cir. 1999).  In the case of a regulatory taking, the court continued, "the government prevents the landowner from making a particular use of the property that otherwise would be permissible."  See id. (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014 (1992)).

In this case, plaintiffs have not alleged facts that suggest defendant, or any third party, has physically occupied the property at issue.  The only allegations of the complaint that suggest physical access has been impeded involve the damage done to the roads by the forest fire and subsequent flooding.  See ECF No. 1 at 13.  Rather, plaintiffs describe their claim, in several passages of the complaint, as centered on the issue of defendant's allegedly improper requirement that plaintiffs apply for a permit before repairing the roads at issue.  See id. at 1-2 ("Plaintiffs allege that the Defendants [sic] in and through their agencies and employees, by denying and refusing to recognize the statutorily vested real property right-of-way easements of Plaintiffs, by attempting to extract special use permits, permit fees, and by requiring Plaintiffs to follow prohibitively expensive procedures in order to obtain special use permits, have deprived Plaintiffs of all meaningful access to their private property. . ."); id. at 15 ("The procedures the United States Forest Services [sic] is requiring to repair the roads in question, including environmental impact assessments, are cost prohibitive and unreasonable, especially given that Plaintiffs have an easement and the United States Forest Service is not permitted to deprive Plaintiffs of reasonable access to their Properties."); id. ("Defendants' [sic] actions constitute a taking of Plaintiff's [sic] property for which

4

compensation is due within the meaning of the Fifth Amendment to the United States Constitution because absent compliance with the demanded special use permit and associated fees and related costs, Defendant would completely deprive Plaintiff access to their private property."); id. at 16 ("Defendants [sic] have taken Plaintiff's [sic] private property by extracting a permit and fees for the use of Plaintiff's [sic] own vested easement property right, all in violation of the Fifth Amendment of the United States Constitution . . .").

In their response to defendant's motion to dismiss, plaintiffs claim that defendant has "physically seized plaintiffs' real property interest under threat of civil and criminal prosecution," and that defendant has "physically deprived them of the use and enjoyment, include the commercial mining value" of their land. See ECF No. 12 at 10. These assertions of physical invasion, however, do not accurately reflect any allegations in the complaint. As such, the court finds that plaintiffs' complaint is properly evaluated as alleging a regulatory taking. See, e.g., Forest Properties, 177 F.3d at 1364 (holding that the denial of a permit preventing plaintiff from making certain use of its property is "a classic example of a regulatory taking").

According to the Supreme Court, the fact that defendant seeks to impose a permit requirement on plaintiffs' use of the property, is not, in and of itself, a taking.

> [T]he mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking. The reasons are obvious. A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner. Only when a permit is denied and the effect of the denial is to prevent "economically viable" use of the land in question can it be said that a taking has occurred.

United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 126-27 (1985) (citing Hodel v. Virginia Surface Mining & Reclamation Ass'n., 452 U.S. 264, 293-297 (1981)). See also Estate of Hage v. United States, 687 F.3d 1281, 1288 (Fed. Cir. 2012) (stating that the "mere existence of a requirement for a special use permit" does not constitute a regulatory taking).

Relevant precedent clearly establishes that a claim for a regulatory taking is not ripe until a permit is both sought and denied. See Howard W. Heck & Assocs., Inc. v. United States, 134 F.3d 1468, 1471 (Fed. Cir. 1998) (holding that plaintiff's regulatory takings claim was not ripe for consideration when the permit application was removed from active status because it was incomplete, but no final decision on the application had

been made). See also Estate of Hage, 687 F.3d at 1286 ("A regulatory takings claim 'is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'") (quoting Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985)).

The court does not, in this opinion, make a determination as to whether plaintiffs have a vested property right in the easements they allege are coextensive with County Roads 268 and 89. But even assuming plaintiffs' characterization of their interest is correct, defendant's regulatory taking claim is not ripe. Plaintiffs do not allege in the complaint that they have applied for the special use permit or paid any fees. See generally ECF No. 1. And, in their response to defendant's motion to dismiss, plaintiffs confirm that they have not done so. See ECF No. 12 at 13 (noting that plaintiffs have refused to seek a special use permit).

IV.   Conclusion

For the foregoing reasons, defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction, ECF No. 11, is **GRANTED**. The clerk's office is directed to **ENTER** judgment dismissing plaintiffs' complaint without prejudice.

IT IS SO ORDERED.

    s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge